UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **MARY A. WEATHERLY** | **14-11485** |
| | SECTION A |
| DEBTOR | CHAPTER 7 |
| | |
| **MARY KATHY DAVIS** | ADVERSARY NO. |
| PLAINTIFF | **14-1045** |
| VERSUS | |
| **MARY A. WEATHERLY** | |
| DEFENDANT | |

**MEMORANDUM OPINION**

**I. Introduction**

On February 11, 2008, Defendant, Mary A. Weatherly ("Weatherly") signed a promissory note in favor of Plaintiff, Mary Kathy Davis ("Davis") for $36,000.00.[1] Weatherly failed to pay the money owed. On June 10, 2014, Weatherly filed a Chapter 7 voluntary petition for bankruptcy.[2] On September 15, 2014, Davis filed an adversary proceeding seeking to have the $36,000.00 debt deemed nondischargeable. On June 5, 2015, the Court held a trial on the merits of the adversary complaint. At the conclusion of the trial, the parties requested additional time for post-trial briefing. The Court set a deadline of July 10, 2015, for the filing of post-trial briefs, after which the Court took the matter under advisement.

---

[1] *See* Exh. 3.

[2] *See* P-21, Amended Pre-Trial Order, uncontested material fact seventeen (17).

**II. Facts**

In 2004, Weatherly was employed by Dream Homes, Inc. ("Dream Homes"), a company owned and operated by her mother, Judith Weatherly. Judith Weatherly is the president of Dream Homes and initially, Weatherly was designated as the company's vice-president.[3] Weatherly's position was to pre-sell custom homes Dream Homes constructed. After a client purchased a lot, Weatherly prepared the plans and specifications for their home's construction. Weatherly was not involved in the finances of Dream Homes, nor did she prepare any financial statements.

Subsequent to her employment by Dream Homes, Weatherly met Davis. The two women developed a friendship. During the course of their relationship, Weatherly expressed a desire to start her own business, free from her mother. Weatherly had three (3) properties she wanted to develop on her own, without her mother's involvement, but she needed funds for the venture.[4] Davis offered to provide Weatherly with a $30,000.00 "start-up" loan contingent upon sufficient collateralization.[5]

Weatherly disclosed to Davis that she had no real property. However, she advised Davis that her mother might have property that could be used to secure the loan. After speaking with her mother, Weatherly advised Davis that her mother had consented to the use of a property located at 3824 Day Street, Marrero, Louisiana ("Day St. property") as collateral for the loan.[6] Weatherly informed Davis that to the best of her knowledge, the Day St. property was owned by Dream Homes

---

[3] *See* Exh. 3.

[4] The first property was located at 188 Hidden Lane, Bridge City, Louisiana ("Hidden Lane"). The second property was located at 5500 Vermillion Street, New Orleans, Louisiana ("Vermillion Street"). The address of the third property was not identified.

[5] The note included prepaid interest. As a result, Weatherly agreed that in exchange for the $30,000.00, she would repay Davis $36,000.00 within one (1) year. *See* Exh. 3.

[6] *See* P-21, Amended Pre-Trial Order, uncontested material fact three (3).

or Judith Weatherly.[7] Thereafter, Davis viewed the property and agreed to accept it as collateral for the loan. Davis made no effort to verify that the property was owned by Dream Homes or Judith Weatherly.

Rather than set up a separate business enterprise to develop the three (3) parcels discussed with Davis, Weatherly entered into a Performance Contract ("Contract") with Dream Homes.[8] Under the Contract, Judith Weatherly agreed to collateralize Weatherly's loan with the Day St. property. In exchange, Weatherly agreed to fund and supervise the development of the properties and the two would split the profits, forty (40) percent to Weatherly and sixty (60) percent to Judith Weatherly.

Judith Weatherly then prepared the paperwork necessary to document the loan and mortgage. On February 11, 2008, Judith Weatherly, as president and secretary for Dream Homes, executed a corporate resolution acknowledging her agreement to use the Day St. property as collateral for Weatherly's loan.[9]

On February 11, 2008, Weatherly and Judith Weatherly, as vice-president and president, respectively, of Dream Homes, and individually, signed a promissory note agreeing to repay Davis $36,000.00 on February 12, 2009.[10] A mortgage on Day St. was simultaneously executed by Dream Homes, through its president Judith Weatherly, to secure the loan.[11] Davis, however, did not have

---

[7] *See* P-21, Amended Pre-Trial Order, uncontested material fact four (4).

[8] *See* Exh. 2.

[9] *See* Exh. 1.

[10] *See* Exh. 3. The note included prepaid interest of $6,000.00.

[11] *See* Exh. 4.

the mortgage recorded until November 18, 2009.[12]

Once the mortgage was executed, $30,000.00 was wired to a bank account opened in the name of Dream Homes ("Dream Homes account"), with Weatherly designated as the sole signatory. The $30,000.00 was used to develop the first of the three (3) properties, Hidden Lane.[13]

Prior to finishing the Hidden Lane project, Weatherly also started work on the second property located at 5500 Vermillion Street, New Orleans, Louisiana ("Vermillion Street"). It was at this point that Judith Weatherly made demand for her share of the profits from Dream Homes.

In response to Judith Weatherly's demand, an agreement was reached between the Weatherlys ("Contract II").[14] Under the agreement's terms, Judith Weatherly was authorized to draw $30,000.00 from the funds available to develop the second property, Vermillion Street. The agreement specified that the $30,000.00 represented full payment of Judith Weatherly's percentage of profits and office expenses associated with the Vermillion Street property.[15]

Despite this payout, Judith Weatherly did not disassociate herself from the development of the Vermillion Street property. Instead, Judith Weatherly agreed to work with Weatherly to complete the project. Judith Weatherly agreed to handle all necessary operations to facilitate the building of the Vermillion Street home, with Weatherly providing the plans, specifications and field supervision.

During the construction of the Vermillion Street home, Judith Weatherly and Weatherly's

---

[12] *See* P-21, Amended Pre-Trial Order, uncontested material fact twelve (12).

[13] Testimony of Weatherly.

[14] *See* Exh. 6.

[15] The balance of the profits from the Vermillion Street development was to be paid to Weatherly.

relationship deteriorated. While no specifics were provided as to the cause, in June 2008, Judith Weatherly distanced herself from Weatherly and the Vermillion Street development.

On June 18, 2008, Judith Weatherly ousted Weatherly as vice-president of Dream Homes and disassociated any connections Weatherly had with the company.[16] Shortly thereafter, she notified Kathy Tharbs ("Tharbs"), the owner of the Vermillion Street property, that the contract she had entered into with Dream Homes was null and void.[17] Judith Weatherly also took over construction on the third property.[18]

As a result of Judith Weatherly's actions, Weatherly lost access to the funds in Dream Homes' account. Nevertheless, using her own resources,[19] Weatherly finished the Hidden Lane and Vermillion Street projects. However, Weatherly was unable to pay off Davis' loan.

Upon learning that Weatherly could not repay her loan, Davis filed suit. On June 15, 2010 a default judgment was entered in the Twenty-Fourth Judicial District Court for the Parish of Jefferson ("24th JDC") against Weatherly, Judith Weatherly and Dream Homes for $36,000.00.[20] On July 19, 2010, Davis filed a foreclosure action against the Day St. property.[21] During this action Davis discovered the Day St. property was not owned by Dream Homes or Judith Weatherly but

---

[16] *See* Exh. 5.

[17] *See* Exh. 8.

[18] Weatherly testified that Judith Weatherly and Dream Homes were ultimately fired from the third property project.

[19] Weatherly testified that a portion of the funds used to finish the projects came from the sale of her car.

[20] The default judgment also specified that the defendants were to pay judicial interest, costs, and twenty (20) percent attorney's fees. *See* P-21, Amended Pre-Trial Order, uncontested material fact sixteen (16).

[21] *See* P-21, Amended Pre-Trial Order, uncontested material fact seventeen (17).

instead, EZ 2 Hide, LLC ("EZ 2 Hide").

On June 10, 2014, Weatherly filed a Chapter 7 voluntary petition for bankruptcy.[22]

## II. Law and Analysis

Davis alleges that her claim against Weatherly should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

A debt is nondischargeable under section 523(a)(2)(A) if by a preponderance of evidence, five (5) factors are satisfied. Davis must prove that: (1) Weatherly made a representation; (2) she knew was false; (3) with the intent to deceive; (4) Davis actually and justifiably relied on the representation; and (5) Davis sustained a loss as a proximate result of her reliance.[23]

Debts that satisfy the third element, the scienter requirement, are debts obtained by frauds involving "moral turpitude or intentional wrong, and any misrepresentation must be knowingly and fraudulently made." *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992). An intent to deceive may be inferred from "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995) (citing *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994)).[24]

In this case, the Court finds that Davis has satisfied only two (2) of the five (5) factors necessary for Weatherly's debt to be excepted from discharge. Factor one (1) is satisfied in that Weatherly represented to Davis that the Day St. property was owned by Dream Homes or Judith Weatherly and could be used as collateral to secure Davis' loan.

---

[22] *See* P-21, Amended Pre-Trial Order, uncontested material fact nineteen (19).

[23] *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

[24] *Id.*

6

Factor two (2) has not been established. The evidence supports a finding that Weatherly did not know her representation was false. Although Weatherly was an officer of Dream Homes, she was not involved in its financial affairs. When she approached Judith Weatherly about providing collateral for the Davis loan, Judith Weatherly agreed to offer Day St. Weatherly's testimony that she had no idea the property was not owned by either Dream Homes or Judith Weatherly was credible.

Weatherly also established through her testimony that she had no intent to deceive. While factor three (3) might be satisfied if Weatherly exhibited a reckless disregard for the truth, the Court does not find this to be the case. Weatherly believed Day St. was owned by Dream Homes or Judith Weatherly. Judith Weatherly did not correct this impression. In addition, once the terms of the loan were established, Judith Weatherly prepared the closing documentation. Given that Judith Weatherly was personally responsible for this loan, there was no reason to believe that the collateral would not be delivered. In fact, in the mortgage granted over Day St., Dream Homes represented and warranted its right to encumber the property. That mortgage was signed by Judith Weatherly, as president of Dream Homes.[25] Thus, the Court concludes that factor three (3) has not been satisfied.

The Court finds that while Davis did rely on Weatherly's representation, her reliance was not justified. Davis was not a sophisticated lender. Nevertheless, she should have confirmed who was the owner of the property. This information could have been obtained *via* a cursory check of

---

[25] The mortgage specifies Judith T. Weatherly as a borrower and provides that the Borrower is the full and lawful owner of the Property. The mortgage further provides: "BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrance of record."

the tax assessor's records. In any event, she was aware that Weatherly <u>was</u> <u>not</u> the owner. Davis was also told that Weatherly believed Judith Weatherly or Dream Homes owned the property. Given the uncertainty expressed by Weatherly as to the actual owner, the Court finds Davis' reliance on Weatherly's statement unjustified. Further, given Judith Weatherly's representation and warranty as to ownership in the mortgage itself, both Davis and Weatherly were justified in relying on Judith Weatherly's assertions as to ownership.

Factor five (5) has been satisfied. Davis has clearly sustained a loss as a proximate result of her reliance on Weatherly's representation. Such a showing, however, is insufficient to satisfy her burden of proving nondischargeability pursuant to section 532(a)(2)(A). Therefore, the debt owed by Weatherly to Davis is dischargeable. A separate Judgment will be entered in accord with this ruling.

New Orleans, Louisiana, July 22, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge